# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN (WATERLOO) DIVISION

| | |
|---|---|
| JANE ALLEN, <br>     Plaintiff, <br><br> vs. <br><br> C.R. BARD, INC., <br>     Defendant. | No. 11-cv-2031-LRR <br><br> **REPORT AND RECOMMENDATION** |

This cause is before the Court pursuant to defendant's Motion to Exclude or Limit the Opinions and Testimony of Dr. Suzanne Bartlett (Doc. 31) and was referred to the undersigned for a report and recommendation. For the following reasons, I respectfully recommend that the District Court **deny** defendant's motion.

## I.  PROCEDURAL HISTORY

The above-styled action was initially one of many products liability cases consolidated into a single multidistrict litigation assigned to the Southern District of West Virginia and has since been remanded back to this Court for trial and any remaining pre-trial proceedings. (Docs. 4, 5). The specific motion now before the Court was first brought in the multidistrict litigation prior to remand. Plaintiff filed a resistance to defendant's motion (Doc. 35), and defendant subsequently filed a reply brief (Doc. 36). The Honorable Joseph R. Goodwin, United States District Judge (Southern District of West Virginia) reserved ruling on the motion. As such, the motion is now properly before this Court and ripe for review.

## II. ANALYSIS

Plaintiff, Jane Allen, was treated by Dr. Suzanne Bartlett for stress incontinence and pelvic floor prolapse. In 2007, Dr. Bartlett implanted plaintiff with anterior and posterior Avaulta Plus Biosynthetic Support Systems. (Doc. 31, at 5). Plaintiff alleges that the Avaulta product was defective and caused plaintiff's vaginal wall to erode. (Doc. 31-2, at 2). Dr. Bartlett was deposed in 2014 and defendant now seeks "to exclude a single line of [Dr. Bartlett's] testimony." (Doc. 36, at 2).[1] Specifically, the question asked and the answer provided were:

> [Question]. Okay. Because it was the polypropylene that was causing the problems?
> [Answer (Dr. Bartlett)]. Yes.
> * * *
> [Answer]. And what I was seeing was that it was only the polypropylene that was eroding into the vagina, and if we could take that part out of it, I thought this could still be—have potential.

(Doc. 31-1, at 20 67: 13-24). Defendant alleges that Dr. Bartlett's answer constitutes improper opinion testimony that the inclusion of polypropylene in the product design rendered the Avaulta product defective and was the ultimate cause of plaintiff's injuries. (Doc. 31, at 5-9).

Under *Daubert*, expert testimony is admissible if it "rests on a reliable foundation and is relevant." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). In a prior ruling regarding the admissibility of expert witness testimony from treating physicians in connection with this case, the Southern District of West Virginia held:

> (1) Causation opinions, if formed in the course of treatment of the bellwether plaintiffs, and (2) fact testimony related to the learned intermediary issue, specifically, whether the treating physicians would have used the Avaulta products if they were given the warnings that the plaintiffs

---

[1] Plaintiff was not required to provide a Rule 26(a)(2)(B) expert report for Dr. Bartlett, as Dr. Bartlett's opinions were formed during the course of her care and treatment of plaintiff.

> contend should have been given, should not be excluded. These opinions fall within the realm of proper testimony from treating physicians. I further **FIND** that (1) expert opinions, if any, on product design, (2) testimony regarding other patients and complications unrelated to the bellwether plaintiffs treated by the physician, and (3) other opinions formed outside of the treating physicians' care and treatment of the bellwether plaintiffs should be excluded. These latter opinions are fraught with reliability and relevancy issues.

*In re C.R. Bard, Inc.*, 948 F. Supp.2d 589, 616-17 (S.D. W. Va. 2013) (emphasis in original). Thus, if defendant is correct that Dr. Bartlett's testimony constitutes an improper opinion on the product's design, that testimony should be excluded.

A close reading of the contested testimony shows that Dr. Bartlett was not testifying to the existence of a defect with the product; rather, Dr. Bartlett was explaining her reasoning for providing her patients with a modified course of treatment to the standard Avaulta product. Although Dr. Bartlett did state that the polypropylene was the portion of the product that caused harm to her patients, Dr. Bartlett stopped short of opining that this was a product defect. Merely identifying the cause of an injury for medical treatment purposes is not synonymous with opining that the cause is actually a product defect. Thus, Dr. Bartlett's testimony relates only to her treatment of plaintiff and should not, therefore, be excluded under *Daubert* as impermissible expert testimony. *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 604 (N.D. Fla. 2009) ("[T]reating physicians may offer medical opinion regarding their care and treatment of a patient, including their diagnoses of a patient's medical conditions and causes of those conditions, without production of an expert report.").

Furthermore, "the treating physician for whom no expert report is supplied is not permitted to go beyond the information acquired or the opinion reached as a result of the treating relationship to opine as to the causation of any injury." *Lorenzi v. Pfizer, Inc.*, 519 F. Supp.2d 742, 750 n. 6 (N.D. Ohio 2007). This is not to say that Dr. Bartlett

need not be qualified as an expert to testify to her treatment of plaintiff; rather, Dr. Bartlett need not be qualified on this type of product defect because Dr. Bartlett is simply not testifying to whether the product was defective. Defendant has not challenged Dr. Bartlett's qualifications to testify as to her treatment of plaintiff, and this issue will not be taken up *sua sponte*.

Finally, it is notable that the United States Supreme Court has stated "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Hence, if defendant believes Dr. Bartlett's testimony is "shaky," defendant will have the opportunity to present contrary evidence and attack her testimony by fully cross-examining Dr. Bartlett.

### III. CONCLUSION

For the reasons set forth herein, I find that Dr. Bartlett's testimony does not concern whether the Avaulta product was defective and, therefore, the testimony is not impermissible under *Daubert*. As such, I respectfully recommend that the District Court **deny** defendant's motion.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 15th day of September, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa